(No. 58601.—

MICHAEL P. LANE, Director of Corrections, Plaintiff, v. ROBERT L. SKLODOWSKI, Judge, *et al.*, Defendants.

*Announced July 12 and July 15, 1983.—Opinion filed August 29, 1983.*

312

Neil F. Hartigan, Attorney General, of Springfield (Michael J. Hayes and James R. Carroll, Assistant Attorneys

General, of Chicago, of counsel), for plaintiff.

Richard M. Daley, State's Attorney, of Chicago (Richard A. Devine, Michael E. Shabat, Joan S. Cherry, Myra J. Brown, and Glenn Sechen, Assistant State's Attorneys, of counsel), for defendant Judge Robert L. Sklodowski.

John A. Barra, State's Attorney, of Peoria (Chris L. Fredericksen, Assistant State's Attorney, of counsel), for defendant Judge Robert E. Manning, Jr.

Edward F. Petka, State's Attorney, of Joliet (Steven J. Prodehl, Assistant State's Attorney, of counsel), for defendant Circuit Court of Will County.

Daniel D. Doyle, State's Attorney, of Rockford, for defendant Judge Harris H. Agnew.

Robert W. Gettleman and Arthur Don, of D'Ancona & Pflaum, and Ruthanne DeWolfe, all of Chicago, for *amicus curiae* John Howard Association.

JUSTICE SIMON delivered the opinion of the court:

Our primary responsibility in this original action is to determine the scope of the authority granted to the Director of the Department of Corrections under a statute which provides for the early release of prisoners on account of good conduct. This opinion explains the basis for orders previously entered in this case on July 12, 1983, and July 15, 1983.

In this action the Director, Michael P. Lane, sought the issuance of writs of *mandamus* and prohibition or a supervisory order directing the respondents, judges of the circuit courts of Cook, Peoria, Sangamon, Will and Winnebago counties, to dismiss numerous proceedings which had been initiated against him by several State's Attorneys. The petition for leave to file this action was filed a day after a judge of the Cook County circuit court issued a body attachment for the Director's arrest,

threatened to imprison him if he did not appear in person before the judge the next morning, and directed that the Attorney General was not to represent the Director in that proceeding. On the same day the petition was filed, we granted leave to file the action and issued a stay of all the circuit court proceedings. The respondents are represented before this court by the State's Attorneys who brought the initial proceedings in the circuit courts.

The proceedings in Cook and Peoria counties sought a rule to show cause why the Director should not be held in contempt, while the actions in Sangamon, Will and Winnebago counties sought a declaratory judgment and an injunction. All of the actions, however, required the circuit courts to determine the scope of the Director's authority to award meritorious good time under section 3—6—3(a)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(3)), which provides:

> "Sec. 3—6—3. Rules and Regulations for Early Release. (a)(1) The Department of Corrections shall prescribe rules and regulations for the early release on account of good conduct of persons committed to the Department which shall be subject to review by the Prisoner Review Board.
>
> (2) Such rules and regulations shall provide that the prisoner shall receive one day of good conduct credit for each day of service in prison for all classes of felonies other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court.
>
> (3) *Such rules and regulations shall also provide that the Director may award up to 90 days additional good conduct credit for meritorious service in specific instances as the Director deems proper.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a).)

Under this section there are two sources of good conduct credits which can lead to the early release of a prisoner: (1)

the one-day credit for one day served provided for in subsection (2), and (2) the 90-day credit for meritorious service provided for in subsection (3).

The Director and the State's Attorneys disagree on the interpretation to be placed on the 90-day limitation in subsection (3). The Director contends that it applies only to the amount of credit for meritorious service that he can award a prisoner *at any one time* while the State's Attorneys contend that it prevents the Director from granting more than an accumulative total of 90 days' credit for meritorious service to an individual prisoner over the period of his incarceration. The Director incorporated his interpretation of the statute into the Administrative Regulations of the Department of Corrections (see Admin. Regs. Dept. Corr. sec. 864(II)(E)), and made it a regular practice of the Department to grant individual prisoners more than one award of 90 days. The State's Attorneys observe that prisoners have received as many as 313 days' credit for meritorious service.

After hearing oral arguments in this case on July 12, 1983, we entered the following order:

> "The Court holds, contrary to the Director's contention, that the statute in question (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(3)) confers authority on the Director to grant no more than a total of 90 days additional good conduct credit for meritorious service; therefore, the writ is denied.
>
> IT IS FURTHER ORDERED that all pending proceedings in this case are stayed until further order of this Court.
>
> A written opinion will follow."

We clarified this order on July 15, 1983, by the following additional order:

> "This matter coming on to be heard, on the motion of the petitioner-plaintiff,. Michael P. Lane, for clarification of and a stay of the Court's order in this cause of July 12, 1983, and the court being fully advised;
>
> IT IS HEREBY ORDERED that, (1) The effect of

this Court's order of July 12, 1983, shall not extend to or apply to any awards of additional good conduct credit made by the petitioner-plaintiff, Michael P. Lane, prior to July 13, 1983; (2) Considering that the adequacy of prison facilities and personnel and related matters, referred to in the petition and motion, are essentially matters within the province of the General Assembly, the motion to stay the effect of this Court's order of July 12, 1983, is denied."

"It is a primary rule of statutory construction that the intention of the legislature should be ascertained and given effect. In so doing, courts look first to the terms of the statute." *People v. Robinson* (1982), 89 Ill. 2d 469, 475; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139.

In this case the relevant portion of the statute provides that "the Director may award up to 90 days additional good conduct credit for meritorious service in specific instances ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(3).) The Director argues that the use of the plural *"instances"* shows that the legislature intended to permit multiple awards of up to 90 days each. The use of the plural does indicate that the statute permits multiple awards, but that does not mean that the interpretation the Director places upon the statute is correct. The proper interpretation of the statutory language is that the Director may make multiple awards of less than 90 days each provided that the total number of days awarded to any one prisoner does not exceed a total of 90 days. A consideration of section 3—6—3(a)(3) in the light of the purpose and structure of the 1977 act that added it to the Unified Code of Corrections (Pub. Act 80—1099, 1977 Ill. Laws 3264, 3289) persuades us that this interpretation is the correct one.

The 1977 act created a determinate sentencing structure in Illinois by establishing minimum and maximum terms of imprisonment for all felonies (see Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1) and by circumscribing the discretion of any official to grant prisoners early release.

For example, the Act abolished the Parole and Pardon Board, which previously had possessed broad powers to establish a prisoner's date of release (see Ill. Rev. Stat. 1977, ch. 38, pars. 1003—3—2(a)(1), 1003—3—3), and replaced it with a Prisoner Review Board with only limited authority, not relevant here, to determine the time of release. (See Ill. Rev. Stat. 1981, ch. 38, pars. 1003—3—2(a)(3), (4).) Under the new determinate-sentencing system, the time of early release is fixed by operation of law. Each prisoner serving less than a life sentence is entitled to mandatory supervised release after serving "the full term of a determinate sentence less time credit for good behavior." Ill. Rev. Stat. 1981, ch. 38, par. 1003—3—3(c).

In the 1977 act the legislature also carefully circumscribed the Director's authority to grant, revoke and restore good-conduct credits. Whereas the former provisions of the Unified Code of Corrections granted the Director broad discretion in formulating the rules and regulations for the diminution of sentences on account of good conduct or meritorious service (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—3(a)), section 3—6—3(a)(2), quoted above, now provides that a prisoner earns automatically one day of good conduct credit for each day served in prison (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(2)), and section 3—6—3(a)(3), which is the subject of this action, now provides that the Director may only award "up to 90 days additional good conduct credit for meritorious service in specific instances." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(3).) Likewise, prior law granted the Director broad discretion in revoking good-conduct credits as a penalty for prison rule infractions (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—3(c)), but section 3—6—3(c) now provides that prisoners may not be penalized more than one year for any one infraction and that revocation by the Director of more than 30 days of credits in any one year requires review by the Prisoner Review Board (Ill. Rev. Stat. 1981, ch. 38,

par. 1003—6—3(c)(2)). If the Director decides to restore more than 30 days of credits previously revoked the same section also provides for review of that decision by the Board. Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(c)(3).

To establish the system of determinate sentencing in the 1977 act the legislature carefully circumscribed the authority of every public official charged with making any decision affecting the time of a prisoner's release. After the sentencing judge fixes the term of imprisonment the length of time that a prisoner will serve is determined, with limited exceptions, by operation of law. When considered in this context, it is inconceivable that the legislature could have intended in enacting section 3—6—3(a)(3) to grant the Director the unreviewable and unlimited authority to award any number of days of credit for meritorious service he saw fit. As noted above, when the legislature gave the Director the power to revoke or restore more than 30 days of credits it required a review of his decision by the Board. We believe that the legislature's failure to provide any review for the Director's decisions on the grant of credits for meritorious service persuasively establishes that section 3—6—3(a)(3) gives him the authority to grant each prisoner credit from time to time for meritorious service, but the total of such credits is not unlimited, for it is not permitted to exceed a ceiling of 90 days.

*Amicus curiae*, John Howard Association, argues in its brief that, unless this court holds that the Director has unlimited authority to grant early release to prisoners beyond a total of 90 days per incarceration, dangerous and unconstitutional overcrowding of Illinois prisons will occur. The Director made similar arguments in a motion to stay our order of July 12, but as we stated in our order of July 15, 1983, quoted above, these are principally concerns for the General Assembly. To the extent that Illinois prisons become so overcrowded that they violate the eighth amendment's prohibition against the infliction of cruel and unu-

sual punishment (U.S. Const., amend. VIII), such concerns may, of course, become a matter for the judiciary. (See, *e.g.*, *Madyun v. Thompson* (7th Cir. 1981), 657 F.2d 868, 875; *Ruiz v. Estelle* (5th Cir. 1982), 679 F.2d 1115, 1142, *modified on other grounds* (5th Cir. 1982), 688 F.2d 266, *cert. denied* (1983), 460 U.S. ____, 75 L. Ed. 2d 795, 103 S. Ct. 1438; *Lareau v. Manson* (2d Cir. 1981), 651 F.2d 96, 105-09; *Campbell v. Cauthron* (8th Cir. 1980), 623 F.2d 503, 505-07.) In this action, however, our only responsibility is to construe the legislature's intention when it enacted section 3—6—3(a)(3).

In our order dated July 15, 1983, we denied the Director's motion for a stay of our order of July 12 and clarified the application of that order by observing that it "shall not extend to or apply to any awards of additional good conduct credit made by the [Director] prior to July 13, 1983; ***." "It is within our inherent power as the highest court of this State to give a decision prospective or retrospective application," depending upon what fairness and justice require. (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 28, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955.) In this case, prospective application of our interpretation of section 3—6—3(a)(3) is advisable because of the legitimate reliance interests that prisoners possess in their accumulated credits for meritorious service. Under the determinate sentencing system, each time the Director grants a prisoner credits for meritorious service the prisoner can reasonably assume that, barring any misconduct, he will be released from prison that many days earlier. Prisoners may have performed acts or completed courses of study in reliance on the Director's interpretation of section 3—6—3(a)(3). Fundamental fairness and the importance of prison security support our prior holding that the interpretation of section 3—6—3(a)(3) that we announced on July 12 only be applied prospectively. *Cf.* Memorandum from Acting Director of

Corrections Michael P. Lane to All Wardens (Mar. 31, 1981) quoted in Jacobs, *Sentencing by Prison Personnel: Good Time,* 30 U.C.L.A. L. Rev. 217, 267 n.195 (1982) ("Specifically in the area of our attempts to establish control and discipline, the revocation of good time is considered to be an extremely serious consequence which should be applied to inmate discipline cases only after all other less drastic disciplinary procedures have been attempted. \*\*\* It is one of the most serious negative consequences that can be directed to an inmate's behavior, and should be reserved for serious violations of institutional rules").

We hold that the Director may grant no more than a total of 90 days' credit for meritorious service to each prisoner, which credits can be granted from time to time, provided their total does not add up to more than 90 days. However, credits that the Director awarded prior to July 13, 1983, are to be honored.

A brief comment on the contempt proceedings brought against the Director in the circuit courts of Cook and Peoria counties is in order. We assume that the State's Attorneys brought those actions in order to challenge the validity of the Director's erroneous interpretation of section 3—6—3(a)(3) and not to punish him for it. To this extent, civil contempt proceedings can have no further purpose; this court has determined the proper construction of the statute, and the Director has indicated to us that he will act in accordance with our conclusion.

If the State's Attorneys sought to punish the Director for violation of the orders of circuit courts sentencing certain criminal defendants, we believe that the proceedings should be dismissed. "Punishment for contempt has been described as a drastic remedy and \*\*\* it is required that the mandate of the court must be clear before disobedience can subject a person to punishment." (*People v. Wilcox* (1955), 5 Ill. 2d 222, 228; *In re Marriage of Miller* (1982), 108 Ill. App. 3d 63, 67.) In this case the circuit court or-

ders sentenced the defendants to imprisonment for a stated number of years and remanded them to the custody of the Department of Corrections; they said nothing about the Director's authority to grant credits for meritorious service. It is true that the Director erroneously granted more than 90 days' credits for meritorious service to the prisoners involved in the cases before us, but he did so pursuant to departmental regulations which were not contrary to the specific language of any court order. Under these circumstances, the orders sentencing the criminal defendants cannot provide a basis in this case for subjecting the Director to criminal contempt proceedings.

As we indicated in our July 12, 1983, order, the Director's petition for writs of *mandamus* and prohibition is denied. All stays entered in the circuit court proceedings involved in this action are vacated. In the exercise of our supervisory authority we order the circuit courts of Cook and Peoria counties to dismiss the contempt proceedings against the Director which are involved in this action. We also order that the circuit courts of Sangamon, Will and Winnebago counties enter judgment against the Director in the declaratory judgment actions pending in those counties in accordance with the views expressed herein. However, we do not believe it is necessary to enter an injunction against the Director at this time. He has informed the court that he will apply the statute in question in accordance with the construction we have given it in this action, and we believe that he will not act in any way which is inconsistent with the declaratory judgment.

*Writs denied; supervisory*
*orders entered.*